UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHEN G. SCHWEIGER and
DANIEL J. VALENTI,

                  Plaintiffs,

      -against-

GOULSTON & STORRS PC,

                  Defendant.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs, their attorney, Peter M. Levine, for their Complaint against defendant, state:

### NATURE OF THE CASE

1. Plaintiffs Stephen G. Schweiger and Daniel J. Valenti, each an attorney, seek compensation owed but not paid by their prior law firm, Goulston & Storrs PC, where each was an equity partner (known at the firm as "Director") for several years. Though each plaintiff generated millions of dollars in revenue, billed hundreds of hours, maintained and originated significant client relationships, and provided extraordinary value to the firm in fiscal year 2025, neither was paid beyond the aggregate of the base draws he had received prior to departing to another law firm.

2. Each plaintiff's compensation for fiscal year 2025 should have been far in excess of his base draws and should have been increased substantially from fiscal year 2024, given each plaintiff's outstanding individual performance and the robust increase (by at least 25-30 percent) of the firm's profits.

3. Instead, each plaintiff's compensation for fiscal year 2025 was substantially reduced from fiscal year 2024. The reduced compensation was neither consistent with the firm's published compensation criteria nor commensurate with the compensation paid

to similarly-situated and equally-performing Directors, each of whom was paid far in excess of his or her base draws for fiscal year 2025 and received a substantial pay raise from fiscal year 2024.

4.      Goulston & Storrs PC refused to pay each plaintiff the full compensation he had earned solely because each departed to join a competing law firm – a retaliatory forfeiture in violation of the New York Rules of Professional Conduct.

## THE PARTIES

5.      Plaintiff Stephen G. Schweiger is a citizen and domiciliary of the State of New Jersey.

6.      Plaintiff Daniel J. Valenti is a citizen and domiciliary of the State of New Jersey.

7.      Defendant Goulston & Storrs PC is a professional service corporation organized and existing under the laws of the State of Massachusetts with its principal place of business at One Post Office Square, Boston, Massachusetts 02109.

8.      Upon information and belief, Goulston & Storrs PC is authorized to do business in the State of New York in accordance with section 1530 of the New York Business Corporation Law.

9.      Goulston & Storrs PC maintains a place of business at 730 Third Avenue, New York, New York 10017.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction over each claim asserted in this Complaint by virtue of 28 U.S.C. § 1332, because the matter in controversy for each claim exceeds $75,000, exclusive of interest and costs, and each claim is between citizens of different States.

11.     This Court has jurisdiction over the person of the defendant by virtue of section 301 of the New York Civil Practice Law & Rules, because the defendant is present in the State of New York and doing, or has done for relevant periods of time, business in the State of New York.

12.     Venue is proper in this District by virtue of 28 U.S.C. § 1391(b), because (i) the defendant is a resident of New York County within in the meaning of 28 U.S.C. § 1391(d), or (ii) the defendant is subject to personal jurisdiction in this District and thus is deemed to reside in this District for the purposes of 28 U.S.C. § 1391 (c), or (iii) a substantial part of the events or omissions giving rise to each of the claims occurred in this District.

## OPERATIVE FACTS

**The Parties' Professional Status**

13.     Stephen G. Schweiger is a member in good standing of the Bar of the State of New York, having been admitted May 21, 1997 in the Appellate Division, Second Department.

14.     Schweiger is a prominent real estate finance attorney. He represents some of the world's largest financial institutions in a variety of lending transactions and in the workout and restructuring of problematic loans.

15.     Schweiger earned his law degree from New York University and his baccalaureate from Stanford University.

16.     Daniel J. Valenti is a member in good standing of the Bar of the State of New York, having been admitted January 13, 2010 in the Appellate Division, Second Department.

17.     Valenti is a prominent real estate transactional attorney. His practice focuses on real estate joint ventures, mortgage and mezzanine financing, and acquisitions and dispositions. He advises investors, sponsors, lenders, and borrowers. His clients range from institutional and publicly traded companies to closely held firms.

18.     Valenti earned his law degree from St. John's University and his baccalaureate from Baruch College.

19.     Goulston & Storrs PC is a full-service law firm with nearly 250 attorneys across Boston, New York, and Washington, DC. On its website, the firm boasts of being "known for delivering sophisticated counsel with the depth, agility, and collaboration needed to serve clients seamlessly across industries and matters."

-4-

**The Firm's Compensation Criteria**

20.    The compensation of the Directors at Goulston & Storrs PC is governed by several criteria:

▸    the overall quality of the Director's lawyering, which is evaluated by the sophistication of the services performed, the soundness of the judgment exercised, and the consistency of the quality delivered;

▸    the number of hours the Director worked and how efficiently that time was spent;

▸    the amount collected against the fees charged for the Director's time, i.e., the realization rate;

▸    the Director's origination and maintenance of client relationships;

▸    how well the Director delegated work;

▸    the degree to which the Director helped other attorneys at the firm, trained young attorneys, and engaged in recruiting and interviewing;

▸    the Director's expertise in his or her practice area;

▸    the Director's compensation history;

▸    the Director's participation in the stewardship and management of the firm.

21.    These criteria are published to all the Directors.

22.    The published criteria do not include a requirement that the Director be with the firm for the entire fiscal year as a condition for receiving full compensation for the services he or she rendered for the benefit of the firm during the fiscal year. No such requirement was ever communicated to either plaintiff.

23.     The firm's fiscal year runs from April 1 of each year to March 31 of the following year. Each Director's compensation for a fiscal year is set by the firm's Compensation Committee in consultation with the Director.

24.     The firm stresses "gradualism" in respect of either increasing or decreasing any Director's compensation from year to year. A very strong year for a Director does not necessarily result in a large increase in compensation, but if the firm exceeds forecasts, the Director's compensation will increase according to his or her performance and the firm's performance. Likewise, if the firm has a strong year and a Director has a very weak year, the Director will typically see either no increase in compensation or an increase smaller than the firm's percentage profit increase. Rarely will a Director see reduced compensation by any meaningful amount in a strong year for the firm.

25.     In the years the firm exceeded the budgeted forecast, the Directors' compensation rose, and in the years the firm fell below the budgeted forecast, the Directors' compensation declined. This was a consistent pattern for Schweiger, Valenti, and all the other Directors.

26.     Throughout his tenure at Goulston & Storrs PC, each plaintiff reasonably understood — based on the firm's published compensation criteria, the firm's emphasis on "gradualism," and the consistent pattern of compensation determinations over many years — that his compensation for each fiscal year would be determined solely by the quality and quantity of his contributions to the firm and the firm's overall financial performance. Nothing in the published criteria or in any communication from the firm suggested that a Director's post-departure destination would determine the amount of the compensation the Director would receive for the services he had rendered for the benefit of the firm during the fiscal year.

-6-

27.    The firm never disclosed to either plaintiff, at any point during his tenure, that departure for a competing firm would result in the forfeiture of all earned compensation beyond the base draws received prior to departure.

### Schweiger's Tenure at the Firm

28.    Schweiger joined Goulston & Storrs PC as a Director on July 28, 2015. His tenure ended December 12, 2024, during the firm's 2025 fiscal year.

29.    While a Director at Goulston & Storrs PC, Schweiger maintained his office at 730 Third Avenue, New York, New York 10017.

30.    Schweiger served in leadership roles throughout his tenure at Goulston & Storrs PC:

▸    He co-chaired the Real Estate Finance Industry Group.

▸    He served on the Finance Committee, the only member from the New York office.

▸    He served on the Pro Bono Committee.

▸    He spent significant time acting as a mentor for associates and younger Directors.

▸    He lead the annual giving event sponsored by the New York office for the benefit of an organization serving children in need of clothing and basic supplies, achieving participation from partners, associates, and administrative staff for each event over several years.

31.    Schweiger was an excellent "firm citizen," and the senior management told him he was a very valuable member of the firm and critical to the success and culture of the New York office.

32.     During his tenure at Goulston & Storrs PC, Schweiger's compensation ranged from $725,000 to $985,000, which was based both on his individual contributions and the firm's overall success.

33.     In fiscal year 2025, Schweiger's contributions to Goulston & Storrs PC were very strong:

▸     He generated the vast majority of his revenue from those clients listed under his "client responsible" column.

▸     He developed new business independently without siphoning credits from other Directors.

▸     He spread his work to a number of associates, whose working hours were attributed to his origination and billing credits.

▸     He promoted the firm to clients and engaged in significant client development.

▸     He assisted other Directors on their transactions (without asking for "credit" that he could later cite for increased compensation).

▸     He brought in and worked on numerous pro bono matters.

34.     Schweiger's personal hours worked and realization rate for fiscal year 2025 were commensurate with those of his peers and consistent with his performance in prior fiscal years.

35.     When Schweiger disclosed he had decided to accept an offer at another law firm in New York City, he was called into meetings by several members of the firm leadership, who asked him to stay and assured him that his compensation would increase significantly for fiscal year 2025, based not only on his excellent performance but also the firm's extraordinary results.

36.     Though having developed very close relationships at Goulston & Storrs PC over the years, Schweiger decided to leave the firm.

37.     Directors who were similarly-situated to Schweiger, with comparable seniority and performance, saw their compensation increase in fiscal year 2025 to well over $1 million.

38.     Schweiger worked at Goulston & Storrs PC for 70 percent of fiscal year 2025, from April 1 through December 12, 2024. Given Schweiger's performance and the firm's results, his fair compensation for that full fiscal year would have been at least $1 million, 70 percent of which is $700,000.

39.     Schweiger was paid only $305,707 for fiscal year 2025, less than half his compensation, $770,000, for fiscal year 2024.

40.     The compensation paid to Schweiger for fiscal year 2025 was less than the salaries paid to the senior associates for that fiscal year.

41.     Given the firm's compensation criteria and the firm's extraordinary results in fiscal year 2025, there could have been no basis for cutting Schweiger's compensation so significantly other than retribution for his leaving the firm for a competitor.

## Valenti's Tenure at the Firm

42.     Valenti joined Goulston & Storrs PC as an associate in January 2017. He became a Director on April 1, 2022.

43.     While at Goulston & Storrs PC, Valenti maintained his office at 730 Third Avenue, New York, New York 10017.

44.     Like Schweiger, Valenti was an excellent "firm citizen":

‣     He solely managed several client relationships that were important to

the firm from both an economic and strategic perspective.

▸        He co-chaired the Equity Capital Markets Group.

▸        He spread his work and managed large teams of attorneys in both the Boston and New York offices on complex and time-sensitive transactions.

▸        He provided intensive training and served as a mentor to the associates – in all class years – on his teams.

45.        In fiscal year 2025. the year of his departure, Valenti's contributions Goulston & Storrs PC were very strong:

▸        He achieved at least $3.5 million of "client responsible" and "billing attorney" collections.

▸        He achieved at least another $1 million of collections related to services he performed for clients he managed but for which he was not allocated "client responsible" or "billing attorney" credit.

46.        Valenti's personal hours worked and realization rate for fiscal year 2025 were commensurate with those of his peers and consistent with his performance in prior fiscal years.

47.        Directors who were similarly-situated to Valenti, with comparable seniority and performance, saw their compensation increase in fiscal year 2025 to approximately $725,000 to $1,000,000.

48.        Valenti worked at Goulston & Storrs PC for 97.26 percent of fiscal year 2025, from April 1, 2024 through March 21, 2025. Given Valenti's performance and the firm's extraordinary results, his fair compensation for that full fiscal year would have been at the least $900,000, 97.26 percent of which is $875,340.

49.    Valenti was paid only $376,000 for fiscal year 2025, one-third less than his compensation, $575,000, for fiscal year 2024. He suffered a significant cut in compensation even though he had higher "client responsible" and "billable attorney" credit in fiscal year 2025 than he had in fiscal year 2024.

50.    The compensation paid to Valenti for fiscal year 2025 was less than the salaries paid to the senior associates for that fiscal year.

51.    Given the firm's compensation criteria and the firm's extraordinary results in fiscal year 2025, there could have been no basis for cutting Valenti's compensation so significantly other than retribution for his leaving the firm for a competitor.

### FIRST CLAIM
### (On Behalf of Stephen G. Schweiger)
### (Breach of Contract)

52.    All prior averments are repeated.

53.    Stephen G. Schweiger and Goulston & Storrs PC entered into a contract whereby Goulston & Storrs PC agreed to pay Schweiger for his services in accordance with the published compensation criteria and the parties' established course of dealing.

54.    Schweiger fully performed his obligations under the contract.

55.    Goulston & Storrs PC breached the contract by failing to pay Schweiger in full for the compensation he had earned for fiscal year 2025.

56.    Goulston & Storrs PC refused to pay Schweiger beyond the base draws to punish him for departing to a competing firm rather than for any reason related to the quality or value of his services or the firm's financial results.

57.    As a proximate and foreseeable result of said breach, Schweiger was damaged.

58.    Schweiger's damages may be measured by the difference between the compensation he was owed [not less than $700,000] and the amount he was paid [$305,707].

59.    Goulston & Storrs PC is liable to Schweiger for an amount not less than $394,293.

## SECOND CLAIM
### (On Behalf of Stephen G. Schweiger)
### (Quantum Meruit)

60.    All prior averments are repeated.

61.    Stephen G. Schweiger rendered in good faith valuable services for the benefit of Goulston & Storrs PC at the firm's request in fiscal year 2025.

62.    Goulston & Storrs PC accepted the services rendered by Schweiger.

63.    In return for the services he rendered for the benefit of Goulston & Storrs PC in fiscal year 2025, Schweiger expected to be compensated.

64.    Goulston & Storrs PC knew of Schweiger's expectation of compensation.

65.    Schweiger is entitled to be compensated for the reasonable value of the services he rendered for the benefit of Goulston & Storrs PC in fiscal year 2025.

66.    The reasonable value of Schweiger's services may be measured by

▸    his contribution to the firm's profits from the fees paid by the many clients he brought to the firm, the many clients he retained at the firm, and by the clients for whom he provided his services;

▸    his contribution to the quality of the firm's services from his own expertise and from his training, supervision, and mentoring of associates and younger Directors;

‣ his contribution to the firm's reputation from the sophistication of the services he rendered to clients;

‣ his contribution to the firm's management from his leadership of the Real Estate Finance Industry Group and his service on the Finance Committee;

‣ his contribution to the firm's culture from his leadership of charitable projects and his service on the Pro Bono Committee.

67. The reasonable value of the services Schweiger rendered to Goulston & Storrs PC in fiscal year 2025 amounted to no less than $700,000.

68. Goulston & Storrs PC has refused to pay fully for the services Schweiger rendered in fiscal year 2025.

69. Goulston & Storrs PC paid Schweiger only $305,707 for the services he rendered in fiscal year 2025.

70. As a proximate and foreseeable result of the wrongful conduct by Goulston & Storrs PC, Schweiger has been damaged.

71. Schweiger is entitled to receive from Goulston & Storrs PC compensatory damages of not less than $394,293.

**THIRD CLAIM**
**(On Behalf of Stephen G. Schweiger)**
**(Unjust Enrichment)**

72. All prior averments are repeated.

73. Goulston & Storrs PC took a free ride on the services Stephen G. Schweiger rendered in fiscal year 2025 and was enriched at Schweiger's expense.

74. It would be unjust to allow Goulston & Storrs PC to retain the benefit of Schweiger's services without paying the full value of those services.

-13-

75.     As a proximate and foreseeable result of the wrongful conduct by Goulston & Storrs PC, Schweiger has been damaged.

76.     The unjust enrichment of Goulston & Storrs PC at Schweiger's expense may be measured by what Schweiger would have been paid in accordance with the firm's compensation criteria, properly and equitably applied, and the compensation he received, which fell far below the value of the myriad benefits he brought to the firm.

77.     Schweiger is entitled to recover from Goulston & Storrs PC compensatory damages of not less than $394,293.

### FOURTH CLAIM
### (On Behalf of Daniel J. Valenti)
### (Breach of Contract)

78.     All prior averments are repeated.

79.     Daniel J. Valenti and Goulston & Storrs PC entered into a contract whereby Goulston & Storrs PC agreed to pay Valenti for his services in accordance with the published compensation criteria and the parties' established course of dealing.

80.     Valenti fully performed his obligations under the contract.

81.     Goulston & Storrs PC breached the contract by failing to pay Valenti in full for the compensation he had earned for fiscal year 2025.

82.     Goulston & Storrs PC refused to pay Valenti beyond the base draws to punish him for departing to a competing firm rather than for any reason related to the quality or value of his services or the firm's financial results.

83.     As a proximate and foreseeable result of said breach, Valenti was damaged.

84.    Valenti's damages may be measured by the difference between the compensation he was owed [not less than $875,340] and the amount he was paid [$376,000].

85.    Goulston & Storrs PC is liable to Valenti for an amount not less than $499,340.

**FIFTH CLAIM**
**(On Behalf of Daniel J. Valenti)**
**(Quantum Meruit)**

86.    All prior averments are repeated.

87.    Daniel J. Valenti rendered in good faith valuable services for the benefit of Goulston & Storrs PC at the firm's request in fiscal year 2025.

88.    Goulston & Storrs PC accepted the services rendered by Valenti.

89.    In return for the services he rendered for the benefit of Goulston & Storrs PC in fiscal year 2025, Valenti expected to be compensated.

90.    Goulston & Storrs PC knew of Valenti's expectation of compensation.

91.    Valenti is entitled to be compensated for the reasonable value of the services he rendered for the benefit of Goulston & Storrs PC in fiscal year 2025.

92.    The reasonable value of Valenti's services may be measured by

▸    his contribution to the firm's profits from the fees paid by the many clients he brought to the firm, the many clients he retained at the firm, and by the clients for whom he provided his services;

▸    his contribution to the quality of the firm's services from his own expertise, his management of complex and time-sensitive transactions, and his training, supervision, and mentoring of associates;

-15-

‣ his contribution to the firm's reputation from the sophistication of the services he rendered to clients and from his management of client relationships;

‣ his contribution to the firm's management from his leadership of the Equity Capital Markets Group.

93. The reasonable value of the services Valenti rendered to Goulston & Storrs PC in fiscal year 2025 amounted to no less than $875,340.

94. Goulston & Storrs PC has refused to pay fully for the services Valenti rendered in fiscal year 2025.

95. Goulston & Storrs PC paid Valenti only $376,000 for the services he rendered in fiscal year 2025.

96. As a proximate and foreseeable result of the wrongful conduct by Goulston & Storrs PC, Valenti has been damaged.

97. Valenti is entitled to receive from Goulston & Storrs PC compensatory damages of not less than $499,340.

### SIXTH CLAIM
### (On Behalf of Daniel J. Valenti)
### (Unjust Enrichment)

98. All prior averments are repeated.

99. Goulston & Storrs PC took a free ride on the services Daniel J. Valenti rendered during fiscal year 2025 and was enriched at Valenti's expense.

100. It would be unjust to allow Goulston & Storrs PC to retain the benefit of Valenti's services without paying the full value of those services.

101. As a proximate and foreseeable result of the wrongful conduct by Goulston & Storrs PC, Valenti has been damaged.

102.    The unjust enrichment of Goulston & Storrs PC at Valenti's expense may be measured by what Valenti would have been paid in accordance with the firm's compensation criteria, properly and equitably applied, and the compensation he received, which fell far below the value of the myriad benefits he brought to the firm.

103.    Valenti is entitled to recover from Goulston & Storrs PC compensatory damages of not less than $499,340.

### SEVENTH CLAIM
### (On Behalf of Both Plaintiffs)
### (Declaratory Judgment)

104.    All prior averments are repeated.

105.    Upon information and belief, Goulston & Storrs PC, as a matter of policy and practice, withholds from Directors who depart to join competing law firms all compensation earned in excess of the base draws paid during the fiscal year.

106.    Withholding earned compensation in retaliation for joining a competing law firm imposes a forfeiture that restricts the right of an attorney to practice law.

107.    Rule 5.6(a)(1) of the New York Rules of Professional Conduct provides that a lawyer shall not participate in offering or making a partnership or employment agreement that restricts the right of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement.

108.    A provision in a law firm partnership agreement imposing a forfeiture-for-competition is unenforceable restraint on the practice of law.

109.    A justiciable controversy has arisen between each of the plaintiffs and Goulston & Storrs PC regarding the firm's policy and practice of imposing a forfeiture upon Directors who leave the firm for a competitor.

-17-

110.    By virtue of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, each plaintiff is entitled to a declaration that the policy and practice of Goulston & Storrs PC of withholding earned compensation from a Director who leaves for a competitor violates Rule 5.6(a)(1) and is an unenforceable restraint on the practice of law.

WHEREFORE, plaintiffs demand judgment against Goulston & Storrs PC:

A.    on the First Claim, awarding to Stephen G. Schweiger compensatory damages of not less than $394,293, with interest thereon;

B.    on the Second Claim, awarding to Stephen G. Schweiger compensatory damages of not less than $394,293, with interest thereon;

C.    on the Third Claim, awarding to Stephen G. Schweiger compensatory damages of not less than $394,293, with interest thereon;

D.    on the Fourth Claim, awarding to Daniel J. Valenti compensatory damages of not less than $499,340, with interest thereon;

E.    on the Fifth Claim, awarding to Daniel J. Valenti compensatory damages of not less than $499,340, with interest thereon;

F.    on the Sixth Claim, awarding to Daniel J. Valenti compensatory damages of not less than $499,340, with interest thereon;

G.    on the Seventh Claim, declaring defendant's policy and practice of withholding earned compensation from a Director who leaves for a competitor violates Rule 5.6(a)(1) of the New York Rules of Professional Conduct and unenforceable;

H.    on each Claim, awarding to plaintiffs their costs and disbursements of this action, including reasonable counsel fees, and granting to plaintiffs such other, further, and different relief the Court deems just and proper.

## JURY DEMAND

PLEASE TAKE NOTICE that plaintiffs demand a trial by jury on all issues.

Dated: New York, New York
July 16, 2026

PETER M. LEVINE
Attorney for Plaintiffs
444 Madison Avenue, Suite 410
New York, New York 10022
212-599-0009

-19-